IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PRATTVILLE PRIDE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-cv-00786-RAH |
| | ) | [WO] |
| THE CITY OF PRATTVILLE, | ) | |
| ALABAMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Pending before the Court is the Plaintiffs' *Motion for Temporary Restraining Order and Preliminary Injunction* (doc. 2) filed on December 5, 2024. This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Prattville Pride is a non-profit, LGBTQ organization that alleges that the Defendant, the City of Prattville ("City"), has excluded it from participating in the City's Christmas parade (scheduled to begin at 7:00 p.m. on December 6, 2024; i.e., this evening) in violation of the group's First Amendment right to free speech and right to Equal Protection guaranteed by the Fourteenth Amendment of the United States Constitution.

According to Prattville Pride, the group has complied with all the conditions imposed by the City to participate in the parade. The group has submitted its application, paid its fee, and was granted approval by the City to participate in the parade. Thereafter, certain members of the public made general complaints about Prattville Pride's participation in the parade because of the nature of the organization.

On December 3, 2024, the Prattville City Council met and discussed the group's participation.   Apparently, members of the public voiced vehement opposition to Prattville Pride's participation in the upcoming parade.   During the meeting, the City Council's attorney advised that prohibiting Prattville Pride from participating in the parade would constitute "a prior restraint on speech . . . that is strictly prohibited not only under Alabama case law but federal case law." (Doc. 2 at 2.)

Yesterday, Prattville Pride informed the City's Police Chief that the group had received threats which "referenc[ed] harmful actions to be taken against [the group] and [its] float during the Prattville Christmas Parade," and therefore the group requested additional security monitoring and presence.  *(Id.* at 2.)  Prattville Pride also stated that it was "concerned not only with [its] own safety but that of bystanders and parade goers as well.  Having police escorts could be a[n] invaluable deterrent." (Doc. 8.)   In response, the City did not reject the request or additional security, or agree to provide additional security, or offer to investigate the threats.  Instead, the City's mayor removed Prattville Pride from the parade, stating:  that Prattville Pride had brought to the City's attention "serious safety concerns" and that the "City will not put the rights of parade participants ahead of the safety of tits citizens." (Doc. 2 at 2.)

Prattville Pride asserts that there are "no legitimate concerns or credible evidence of any threats to public safety" and that the group's removal from the parade is "nothing more than the [City and the City's mayor] bowing to the pressure from extremists and hecklers in the community who oppose the view of" Prattville Pride. (Doc. 1 at 3.)

Prattville Pride asserts that it will "suffer immediate and irreparable harm" without an emergency order granting injunctive relief prohibiting the City from excluding it from the parade because it would violate the group's fundamental

constitutional rights. (Doc. 2 at 3.)  Further, Prattville Pride contends it is likely to prevail on the merits of their claim.  (*Id.* at 3.)  Prattville Pride argues that its threatened injury, the exclusion from the parade and violation of fundamental constitutional rights, outweighs the damage that an injunction may cause the City and that such an injunction is not averse to the public interest.  (*Id.*)

During a telephone hearing held on the morning of December 6, 2024, the Court inquired of the parties of the nature of the threats.[1]  The only threats mentioned were online threats about throwing eggs, rocks, and water at Prattville Pride's float or possibly slashing the float's tires so that it could not roll down the three mile stretch of the parade route.

Upon consideration of the motion and the evidence presented in support of and in opposition to the motion, the Court concludes that the motion is due to be granted.

Federal Rule of Civil Procedure 65(b) states that a temporary restraining order or injunction may issue if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant." Fed. R. Civ. P. 65(b). A party seeking such an order must establish that:

> (1) there is a substantial likelihood that the moving party will prevail on the merits; (2) the moving party will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the moving party outweighs the threatened harm the proposed injunction may cause the opposing party; and (4) the injunction, if issued, would not be adverse to the public interest.

---

[1] During the telephone call, the Court inquired of the parties of the need for a follow-up hearing for the presentation of evidence and argument.  The parties did not oppose the Court ruling on the motion based on the current record as supplemented by the Defendant's submission of an email. As such, no additional hearing was scheduled or held.

*Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001). The first element does not require "the court . . . to find that Plaintiffs have a substantial likelihood of success on *every* claim set forth in their Complaint; it is sufficient if the law or facts support a substantial likelihood of success on at least one claim that would sustain the issuance of a temporary restraining order." *Butler v. Ala. Jud. Inquiry Comm'n*, 111 F. Supp. 2d 1224, 1230 (M.D. Ala. 2000). A court accepts as true all declarations and well-pleaded factual allegations when considering a plaintiff's requested relief. *Alabama v. United States Dep't of Com.*, 546 F. Supp. 3d 1057, 1063 (M.D. Ala. 2021) (quoting *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976)).

The First Amendment enshrines the right to freedom of speech and assembly. U.S. Const. amend. I. "If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."[2] *Snyder v. Phelps,* 562 U.S. 443, 458 (2011) (citation and internal quotation marks omitted). The First Amendment protects the expression that marching in a parade entails. *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 569 (1995).

The "heckler's veto" is one where governmental action silences "a speaker to appease the crowd and stave off a potentially violate altercation." *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 234 (6th Cir. 2015).  In the hearing this morning, the City claimed that prohibiting Prattville Pride's parade participation is the least

---

[2] While there are areas of unprotected speech, such as incitement of violence, the City makes no argument and provides no evidence that Prattville Pride has engaged in any speech or behavior that would remotely fall into an unprotected speech category.  It is undisputed that Prattville Pride has complied with the City's regulations to participate in the parade which is evidenced by the fact the group's application was accepted.

4

restrictive means possible to avoid violence, which again is limited to vague online threats of throwing eggs, rocks, or water and slashing the float's tires.[3]

The heckler's veto is what the Court has before it today. The City removed Prattville Pride from the parade based on its belief that certain members of the public who oppose Prattville Pride, and what is stands for, would react in a disruptive way. But discrimination based on a message's content "cannot be tolerated under the First Amendment," and viewers or "[l]isteners' reaction to speech is not a content-neutral basis for regulation." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 135 (1992). Thus, the Court finds that the City's decision to remove Prattville Pride from the parade is based on content and speech.

Content-based restrictions are subject to strict scrutiny, *see McCullen v. Coakley,* 573 U.S. 464, 478, 486 (2014), a point both sides agree is the applicable level of scrutiny. State action that limits protected speech will not survive strict scrutiny, unless the restriction is narrowly tailored to be the least-restrictive means available to serve a compelling government interest. *United States v. Playboy Entm't Grp.,* 529 U.S. 803, 813 (2000). "[R]emoving[] or [otherwise] silencing a speaker due to crowd hostility will seldom, if ever, constitute the least restrictive means available to serve a legitimate government purpose." *Bible Believers*, 805 F.3d at 248 (citing *Cantwell v. Connecticut,* 310 U.S. 296 (1940) and *Terminiello v. City of Chi.,* 337 U.S. 1 (1949)).

Here, whether considered under strict scrutiny or a lesser standard, the City has presented no evidence of legitimate, true threats of physical violence. It is undisputed that the threats and public complaints are limited to vague online

---

[3] During the hearing, the Court provided counsel for the City with a hypothetical where it asked whether the City would react the same way and remove a float of Alabama fans who wanted to celebrate their Iron Bowl victory in response to similar threats from Auburn fans. Counsel stated that the City would do so. The Court seriously doubts that.

comments about throwing eggs, rocks, or water at Prattville Pride's float and to the possibility of the float's tires being slashed.[4]   At the hearing, the City admitted that the City can easily require two officers to escort Prattville Pride's float during the two-hour long parade and that it would not be burdensome to do so.  The Court struggles with how the City's decision to remove a law abiding parade participant could ever survive any level of scrutiny when the more easily tailored, and reasonable, response is to simply implement additional security measures, such as two or more law enforcement officers who can walk with the float on the parade route and make an arrest if an egg, water, or rock is thrown.

Prattville Pride has demonstrated (1) a substantial likelihood of success on the merits; (2) that, if the relief is not granted, it will suffer irreparable injury in the form of deprivation of the group's right to freedom of speech and equal protection, *see Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); (3) that the threatened injury outweighs the harm the relief would inflict on the City; and (4) that entry of the relief would serve the public interest. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005).

For the foregoing reasons, it is ORDERED that the Plaintiffs' motion (doc. 2) is GRANTED, and it is ORDERED as follows:

1.      The City of Prattville SHALL rescind its directive removing Prattville Pride from the subject Christmas parade, and is ENJOINED from prohibiting Prattville Pride from participating in the parade.

2.      The City of Prattville SHALL provide at least two law enforcement officers to escort Prattville Pride's float during the duration of the parade and to

---

[4] During the hearing, counsel for the City represented that the person behind the threat of possible tiring slashing had already been identified by police.

enforce the law as necessary against any person who engages in criminal conduct directed against Prattville Pride during the parade.

3.     The Court finds that no bond is necessary for purposes of the relief sought by the Plaintiffs.

**DONE** and **ORDERED** on this the 6th day of December 2024.

_____

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE