IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

PRATTVILLE PRIDE, *et al.*,          *
                                      *
          Plaintiffs,                 *
                                      *
v.                                    *    Case No.: 2:24-cv-00786-RAH-KFP
                                      *
CITY OF PRATTVILLE, *et al.*,        *
                                      *
          Defendants.                 *

## MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants the City of Prattville, Alabama ("City") and Bill Gillespie, Jr. ("Mayor") move this Court to dismiss the complaint filed by Prattville Pride, Adam Hunt, and Caryl Lawson[1] (collectively, "Prattville Pride") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and submit this memorandum brief in support thereof.

## INTRODUCTION

This lawsuit arose from the temporary removal of an LGBTQ organization from a city-sponsored Christmas parade. The City initially approved Prattville Pride's application to participate in the parade. However, the day before the parade, Prattville Pride notified police that the group had received messages threatening

---

[1] Adam Hunt is the President of Prattville Pride, and Caryl Lawson is the Vice President of Prattville Pride.

1

harm against the group and its float. These threats not only posed a safety risk to Prattville Pride, but also the safety of all other parade participants and bystanders. In response to the threats and safety risk, the City removed Prattville Pride from the parade.

After their removal, Prattville Pride filed this action for emergency injunctive relief alleging that the City's removal of the group from the parade violated their rights to free speech under the First Amendment and equal protection under the Fourteenth Amendment to the United States Constitution. To prevent these alleged violations from occurring, Prattville Pride sought an order requiring the City to rescind its removal decision, reinstate the group as parade participants, and provide the group with a police security detail throughout the course of the parade.

This Court held a telephone hearing the morning of the parade, issued an order granting Prattville Pride's request for emergency injunctive relief later that afternoon, and Prattville Pride, with its security detail, participated in the parade.

Now, Defendants respectfully request dismissal of this action for two reasons. First, this case is moot. The parade is over, Christmas has passed, and any threat to Prattville Pride's constitutional rights has been remedied. The threats were directed solely to Prattville Pride's participation in the Christmas parade and there are no plausible allegations that suggest an on-going threat or future harm. Second,

Prattville Pride has failed to state a claim upon which relief may be granted. Accordingly, Defendants move to dismiss this action.

## SUMMARY OF ALLEGED AND RELEVANT FACTS

Prattville Pride "is an organization of citizens [of the City of Prattville, Alabama] who identify as LGBTQ and LGBTQ allies" (Doc. 1). In June of 2024, Prattville Pride "collaborated extensively with City officials" to hold its "inaugural pride event" at one of the City's parks. (Exhibit 1: 1:19:04 - 19:53). The event was attended by nearly 3,000 people and deemed a "resounding success," earning [Prattville Pride] "a feature on 'Good Morning America' and a GLAAD Award." (*Id.*). Following this successful collaboration, Prattville Pride applied to participate in the City's "Christmas in Prattville Christmas Parade." (Doc. 1). The City approved the application without issue. (Doc. 1). The parade was scheduled to begin at 7:00 pm on December 6, 2024. (Doc. 11, p.1).

On December 3, 2024, three days before the parade, the City's Council held its regular biweekly meeting. (Exhibit 1). During the public comments portion of the meeting, some members of the public commented on Prattville Pride's participation in the Christmas parade. One individual to comment on the group's participation was Caryl Lawson, Prattville Pride's vice president. (*Id.* at 1:18:43 - 22:41).

Lawson began her public comments by thanking the Mayor "for choosing a position of inclusion" and for "[his] commitment to fostering a community that welcomes everyone." (*Id.* at 1:18:54 -19:03).  She then confirmed Prattville Pride's participation in the parade and the group's commitment to following the City's parade guidelines.  (*Id.* at 1:20:35 – 43).  Lawson advised that the group's float would feature a drag queen, Miss Fountain City, but no drag performances or dancing.  (*Id.* at 1:21:50 – 22:42).  Lawson assured the council and the meeting attendees that Prattville Pride would not hand out any or proffer any negative displays of Jesus during the parade. (*Id.*).

In addition to addressing the above concerns, Lawson raised concerns of her own. She detailed social media comments "suggesting that there may be rotten tomatoes thrown at [Prattville Pride] or that [its] float might be vandalized" during the parade. (*Id.* at 1:21:00 – 14).  Lawson did not disclose the originator of those comments or ask that the City take any action. (*Id.* at 1:21:14- 41).

At 12:53 am on December 5, 2024, the day before the parade, Lawson contacted the City's Chief of Police and Assistant Chief of Police via email. (Doc. 8). The email stated that "[s]ubsequent to the city council meeting held on December 3rd, there [had] been some additional threats made against [Prattville Pride] referencing harmful actions to be taken against [the group] and [its] float." (*Id.*). Based on those new threats, it had become "apparent" to Prattville Pride that its

members "[were] at risk of being specifically targeted during [the parade]." (*Id.*). The group was now "concerned not only with [its] own safety but that of bystanders and parade goers as well." (*Id.*). Lawson requested that the Chief and Assistant Chief assign "Prattville [p]olice officers to specifically monitor [Prattville Pride's members] and [their] surroundings during staging [before the parade] as well as assign [two] officers to walk near the crowd alongside [the group's] float." (*Id.*).

The new threats were relayed to the City's Mayor, Bill Gillespie, Jr., who then issued the following statement:

> "This morning, it was brought to the City's attention from Prattville Pride that there are serious safety concerns regarding Prattville Pride's participation in the Christmas parade. Until today, there has only been conjecture and speculation regarding potential safety concerns that Prattville Pride's participation in the parade may cause. The City will not put the rights of parade participants ahead of the safety of its citizens. Because of the safety concerns for Prattville Pride, other parade participants, as well as parade bystanders, the City has made the decision to remove Prattville Pride from the Christmas parade. This decision was made with careful thought and consideration while balancing the overall safety of everyone involved at the parade. The City will always respect freedoms and rights of expression. However, as in this instance, it must put the overall safety of its citizens first."

(Doc. 1-A).

Immediately thereafter, Prattville Pride, Lawson, and the group's President, Adam Hunt, (collectively, "Prattville Pride") filed the complaint commencing this

lawsuit against the City and the Mayor pursuant to 42 U.S.C. § 1983, along with a motion for a temporary restraining order and preliminary injunction. (Docs 1, 2).

In their complaint and motion, Prattville Pride requested the same relief: (1) "[a] temporary restraining order directing [the City and the Mayor] to permit Prattville Pride to participate in the 'Christmas in Prattville Christmas Parade' and to cease and desist from any further unlawful interference with the same," and (2) a temporary restraining order directing [the City and the Mayor] "to afford the Plaintiffs and those attending the 'Christmas in Prattville Christmas Parade' police protection in the event that there should be an actual attempt to violently and/or unlawfully to impede the participation of Prattville Pride in the 'Christmas in Prattville Christmas Parade.'" (Doc. 1, pp.6-7).

Prattville Pride asserted that, <u>if the Court denied its request for emergency injunctive relief</u>, it would suffer irreparable injury to their First Amendment right to free speech and 14th Amendment right to Equal Protection. (Doc. 1, Count III). The group also sought monetary damages (compensatory, punitive, and nominal) and attorney's fees and expenses. (*Id.*, p.7).

On the morning of the parade, this Court held a telephone hearing on Plaintiffs' motion for a temporary restraining order and preliminary injunction. (Doc. 9). During the hearing, the City learned for the first time that, in actuality, there were "no legitimate concerns… to public safety." (Doc. 9, p. 2). After the

6

hearing concluded, the Court entered an order granting Prattville Pride's motion. (*Id.*).    Specifically, the order (1) mandated that the City "rescind its directive removing Prattville Pride from the subject Christmas parade," (2) enjoined the City "from prohibiting Prattville Pride from participating in the parade," and (3) required the City to "provide at least two law enforcement officers to escort Prattville Pride's float during the duration of the parade and to enforce the law as necessary against any person who engages in criminal conduct directed against Prattville Pride during the parade." (*Id.*, pp. 6-7).

The City and the Mayor complied with the Court's Order. Prattville Pride participated in the "Christmas in Prattville Christmas Parade" with their own police detail.    (Docs 11, 12). Thereafter, this Court ordered Prattville Pride to "show cause… as to why this case should not be dismissed for lack of a live case or controversy." (Doc. 11).  In response to the Court's Order to Show Cause, Prattville Pride did not request to amend its complaint to add any new claims or request any additional relief, such as a permanent injunction. (Doc. 12).  Instead, Prattville Pride argued that the case should continue in its current state for two reasons: (1) there is a "reasonable expectation" the alleged violation will occur again; and (2) "[g]iven the short time between the initiation of the action and the event, there was not sufficient time to fully litigate the issue prior to the expiration of the harmful act." (Doc. 12, p. 3).

As to the former, Prattville Pride reasons that "[b]ut for this Court in issuing the temporary injunction, Prattville Pride's constitutionally protected rights would have been disregarded by the City of Prattville and Mayor Bill Gillespie" and, therefore, "[w]ithout further litigation and assessment of damages and other relief, there is a reasonable expectation that the City will continue to engage in the exact same unacceptable behavior that has led to the initiation of this case in limiting or restricting Prattville Pride's participation" in future City-sponsored events. (*Id.*, pp. 2-3). This argument is pure speculation.

For Prattville Pride to be subject to the same action again, the following course of events would need to occur: (1) the group must apply to a parade sponsored by the City; (2) the City must approve Prattville Pride's application to participate in the parade; (3) Prattville Pride receive threats of harmful actions related to its involvement in the parade; (4) Prattville Pride must report safety concerns based on those threats of harmful action and request its own police protection the day before the parade is scheduled to begin; and (5) the City, without taking further action, must remove Prattville Pride from the parade. *See Warren v. DeSantis*, No. 23-10459, at *5 (11th Cir. Jan. 10, 2025) (holding that plaintiff who was removed from office by Florida's governor "(1)... must run for another public office for which Florida's governor has the authority to suspend the officeholder, (2)... must win that election,

and (3) Florida's governor must suspend him from office" to defeat dismissal on grounds of mootness).

There are no plausible allegations that suggest the aforementioned sequence of events will recur. To the contrary, Prattville Pride has successfully worked in collaboration with the City on at least one other occasion, i.e., its pride event in June 2024. (Exhibit 1: 1:19:04 - 19:53). While that event was not sponsored by the City, it was held at a City park, for which the City has authority to grant and revoke permits. (*Id.*). That event occurred without issue. (*Id.*).

Prattville Pride also suggests a reasonable expectation of reoccurrence exits because the City failed to provide police protection throughout the parade and failed to take any "quantitative action… to dissuade or otherwise quash the behavior of the bad actors who have made threats that ultimately led to the exclusion of the Prattville Pride organization from the festivities." (*Id.*, pp. 2-3). As a result, the group claims "there is a reasonable expectation that Prattville Pride will continue to face the same discriminatory behavior by the City" if this action is dismissed. (*Id.*). Such allegations are misleading and, frankly, puzzling to Defendants, as Defendants took the exact action Prattville Pride requested that it take to "deter" any "harmful actions" from occurring. (Doc. 8).

It is undisputed that the City complied with this Court's order and assigned law enforcement officers to monitor the crowd and escort Prattville Pride throughout

the duration of the parade. (*Id.*; *see also* Doc. 9, pp. 6-7). During a telephone hearing on December 18, 2024, counsel for the City informed the Court, without objection from Prattville Pride, that Prattville Pride's float was escorted by six police officers – one flanking each side of the float and four SWAT team members following behind – as well as a drone flying overhead. The City also placed undercover officers inside the crowd.

Prattville Pride alleges that one of its participants, who is not a named plaintiff to this suit, was struck by a water balloon during the parade. (Doc. 12., p. 2). As stated during the December 18, 2024 hearing, none of the police escorts observed any water balloons being thrown at or striking a parade participant. Once law enforcement was alerted to this incident by a Prattville Pride member, unnamed officers entered the crowd to locate the alleged offender but were unable to obtain the alleged offender's identity and, therefore, effect an arrest. (*Id.*). Prattville Pride fails to show how the officers' failure to identify and arrest the alleged perpetrator of a misdemeanor crime they did not observe the commission of constitutes "a refusal [by] the City to take affirmative action in protecting the rights of Prattville Pride." (*Id.*, p. 3). Police officers cannot arrest for a misdemeanor offense that they did not witness. However, should the Court find the unnamed officers alerted to this alleged incident failed to take appropriate action and the individual claiming to have been struck by the water balloon has a potentially viable claim, new plaintiffs,

10

defendants, and causes of action would need to be added to this suit; thus, changing the entire nature of the case.

In short, Prattville Pride has not alleged an imminent or even possible threat of future harm. Indeed, Prattville Pride acknowledged in its response to the Court's show cause order that there was one, single potentially harmful event, i.e. the temporary removal from the parade, and that event "expired" on December 6, 2024, when Prattville Pride participated in the Christmas parade. (*Id.*, emphasis added). Stated differently, when the parade concluded, so did this action.

As to Prattville Pride's second argument— "that there was not sufficient time to fully litigate the issue prior to the expiration of the harmful act," Prattville Pride's reason that their requests for various damages, fees, and expenses have not been addressed and, therefore, sustains this action. (*Id.*). Prattville Pride, however, has not alleged any facts to support a claim for compensatory or nominal damages as Prattville Pride did not suffer any actual injury or constitutional deprivation; the law prohibits an award of punitive damages against a municipality; and attorney's fees and expenses are not enough for this court to retain subject matter jurisdiction over this action. *See Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 308 (1986) ("Where no injury was present, no 'compensatory" damages could be awarded'); *see also Hughes v. Lott,* 350 F.3d 1157, 1162 (11th Cir. 2003) ("Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional

right"); *Newport v. Fact Concerts,* 453 U.S. 247, 271, (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983"); *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 541 (2020) (cleaned up) ("[A]n interest in attorney's fees is . . . insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim").

## <u>MOTION TO DISMISS STANDARD</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure requires the dismissal of an action over which the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies.'" *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1244 (11th Cir. 1998). "[T]he Supreme Court has made clear that a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Id.* (internal quotation marks omitted). "An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir. 2009) (internal quotation marks omitted). "[I]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must

be dismissed." *Soliman v. United States*, 296 F.3d 1237, 1242 (11th Cir. 2002) (internal quotation marks and citations omitted).

Additionally, lawsuits that fail "to state a claim upon which relief can be granted" are due to be dismissed as a matter of law. *See* Fed. R. Civ. P. 12(b)(6). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* A complaint does not satisfy the federal pleading standards when it merely "le[aves] open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Twombly*, 550 U.S. at 561.

13

## LEGAL ARGUMENT

## I.    NO LIVE CASE OR CONTROVERSY.

This matter is due to be dismissed for lack of a live case or controversy, as the "Christmas in Prattville Christmas Parade" has concluded and any threat to Prattville Pride's First Amendment right to free speech and Fourteenth Amendment right to Equal Protection arising therefrom has been remedied and prevented from ever occurring.

The jurisdiction of federal courts is limited to the consideration of live "cases" or "controversies." *See* U.S. Const. art. III, § 2. "The doctrine of mootness derives directly from the case or controversy limitation because an action that is moot cannot be characterized as an active case or controversy." *Soliman v. United States*, 296 F.3d 1237, 1242 (11th Cir. 2002) (internal quotation marks and citation omitted). Regarding whether an action is moot, the Eleventh Circuit has stated,

> "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.... [I]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed. In fact, dismissal is required because mootness is jurisdictional. Any decision on the merits of a moot case or issue would be an impermissible advisory opinion."

*Id.* (internal quotation marks and citations omitted).

Prattville Pride brought this action seeking an emergency temporary restraining order and preliminary injunction requiring the City to rescind its

14

removal decision, reinstate the group as parade participants, and provide the group with a police security detail throughout the course of the parade. (Docs 1, 2). The Court granted this relief, and Prattville Pride participated in the Christmas parade with police protection. (Docs 9, 11). There is no further meaningful relief left to be granted by the Court, and "any decision on the merits of [Prattville Pride's] claims would be an [impermissible] advisory opinion." *Warren v. DeSantis*, No. 23-10459, at *4 (11th Cir. Jan. 10, 2025) (holding that plaintiff's requests for injunctive and declaratory relief to be reinstated to office expired with his term of office and, therefore, were moot) (citing *See Aaron's Priv. Clinic Mgmt. v. Berry*, 912 F.3d 1330, 1335 (11th Cir.2019) (concluding that requests for declaratory and injunctive relief regarding a statute that imposed a temporary moratorium on the licensing of new narcotic treatment programs were moot when the moratorium expired).

Prattville Pride argues that the case is not moot because both exceptions to the mootness doctrine apply. (Doc. 12, pp. 2-3). An exception to the mootness doctrine exists "when the action being challenged by the lawsuit is capable of being repeated *and* evading review." *Soliman*, 296 F.3d at 1242 (internal citation omitted). "This exception is narrow and applies only in exceptional situations," i.e., "when (1) there [is] a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2)

15

the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." *Id.* at 1242-43 (internal quotation marks and citations omitted). In other words, "the remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." *Id.* at 1243 (internal citation omitted).

"The plaintiff bears the burden of establishing that [an] exception applies" *Warren v. DeSantis,* at *5 (citing *Hall v. Alabama,* 902 F.3d 1294, 1297-98 (11th Cir. 2018)). Because, for the reasons set forth above, there are no plausible allegations that suggest an on-going threat or future harm, Prattville Pride fails to meet this burden. Accordingly, no live case or controversy exists, and this case is due to be dismissed. *Id.*

## II.    NO VALID § 1983 CLAIM.

If the Court determines that a live case or controversy exists, this action is still due to be dismissed as it does not allege a plausible claim upon which relief may be granted against the Defendants. Prattville Pride's claims against the Mayor fail because the Mayor is sued solely in his official capacity, and the City is a named defendant. Accordingly, the claims against the mayor are redundant and unnecessary. Prattville Pride's claims against the City fail for lack of a valid §1983 claim because there was no actual constitutional violation and Prattville Pride does

not claim that the City has an unconstitutional custom or policy that was the moving force behind any alleged violation.

## A. MAYOR BILL GILLESPIE, JR.

Prattville Pride's claims against Mayor Bill Gillespie, Jr. are due to be dismissed as a matter of law because the claims against him are redundant to the claims against the City of Prattville.

"The Eleventh Circuit has instructed courts to treat suits against government agents in their official capacities as functionally equivalent to suits against the municipality itself." *Durruthy v. City of Miami*, No. 01-4155-CIV-MORE, 2002 U.S. Dist. LEXIS 25857, at *2 (S.D. Fla. Dec. 12, 2002) (citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)). According to the United States Supreme Court, "[a]s long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal citation omitted); *see also Busby*, 931 F.2d at 776 ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local

government units can be sued directly (provided, of course, that the public entity receives notice and an opportunity to respond).").

Here, Mayor Bill Gillespie, Jr. has been sued solely in his official capacity. Because the City of Prattville already is a named defendant, the claims against the Mayor are redundant and due to be dismissed as a matter of law. *See, e.g., Busby*, 931 F.2d at 776 & 782 (affirming a directed verdict in favor of the defendant officers named in their official capacity when the city was also a defendant because keeping the official capacity claims was "redundant and possibly confusing to the jury")

## B. THE CITY OF PRATTVILLE, ALABAMA.

As set forth above, Prattville Pride asserts constitutional deprivation claims under 42 U.S.C. § 1983. "The Supreme Court has placed strict limitations on municipal liability under § 1983." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). To hold a municipality liable under § 1983, a plaintiff must show that a "custom" or "policy" was the "moving force" behind the alleged constitutional deprivation. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

government as an entity is responsible under § 1983"); *see also Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1293 (11th Cir. 2009) ("A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom").

"To impose section 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). The complaint does not meet these requirements.

Here, there are no underlying constitutional violations upon which to predicate municipal liability claims against the City of Prattville. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (holding municipal liability cannot attach absent an underlying constitutional violation). Prattville Pride has admitted that no constitutional deprivation occurred because the Court entered the injunctive relief requested. (Doc. 12, pp. 2-3) ("But for this Court in issuing the temporary injunction, Prattville Pride's constitutionally protected rights would have been disregarded by the City of Prattville and Mayor Bill Gillespie."). Accordingly, no liability can attach to the City.

Nevertheless, even if an underlying constitutional violation could be shown, the complaint does not plead factual allegations that plausibly demonstrate that the

City has a custom or policy that constitutes deliberate indifference to the aforementioned constitutional rights, or that the custom or policy was a moving force behind the violations alleged by Plaintiffs. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A complaint does not satisfy the federal pleading requirements when it merely "le[aves] open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery." *Twombly*, 550 U.S. at 561. Here, the complaint lacks the factual allegations that are required to state a municipal liability claim under § 1983. *See McDowell v. Brown*, 392 F.3d at 1289. Because Prattville Pride fails to establish a viable § 1983 claim against the City under any recognized method, the City moves to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the reasons stated herein, this action is due to be dismissed for lack of a live claim or controversy and for failure to state a claim as a matter of law against Mayor Bill Gillespie, Jr. and the City of Prattville, Alabama. Accordingly,

Defendants respectfully submit that they are entitled to the dismissal of Prattville

Pride's claims.

Respectfully submitted this the 16th day of January, 2025.

/s/ Rick A. Howard
Rick A. Howard (ASB-9513-W79R)
Ashley Tidwell Britton (ASB-3974-O48M)
*Counsel for Defendants*

**OF COUNSEL:**
HOLTSFORD GILLILAND HITSON HOWARD
    STEVENS TULEY & SAVARESE, P. C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
334-215-8585
rhoward@hglawpc.com
abritton@hglawpc.com

/s/ Andrew L. Odom
Andrew L. Odom
Attorney for Defendants

OF COUNSEL:
*The Cleveland Firm, LLC*
707 McQueen Smith Road South
Prattville, AL 36066
334-365-6266
Fax: 334-365-6818
Email: andrew@clevelandriddle.com

/s/ Robert E. Riddle
Robert E. Riddle
Attorney for Defendants

OF COUNSEL:
Law Office of Rob Riddle LLC
119 1st Street
Prattville, AL 36067

334-356-3239
Fax: 334-356-3241
Email: rob@riddlelawllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on this, the 16th day of January, 2025, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I have emailed or mailed a copy of the foregoing pleading to the following parties:

Julia Dianne Collins
John Tyler Winans
*The Harris Firm LLC*
60 Commerce Street
Suite 370
Montgomery, AL 36105
334-782-9938
Fax: 888-270-6762
Email: stevenharris@theharrisfirmllc.com
(**Counsel for Plaintiffs**)

on this the 16th day of January, 2025.

/s/ Rick A. Howard
OF COUNSEL