IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| PRATTVILLE PRIDE, : | |
| ADAM HUNT, : | |
| CARYL LAWSON : | |
| : | |
| Plaintiffs : | |
| | |
| vs. : | CASE NO: 2:24-CV-00786 |
| | |
| THE CITY OF PRATTVILLE, ALABAMA : | |
| A POLITICAL SUBDIVISION OF THE STATE : | |
| OF ALABAMA, AND CERTAIN MEMBERS : | |
| OF IT'S GOVERNING BODY, BILL : | |
| GILLESPIE IN HIS OFFICIAL CAPACITY : | |

**RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

COME NOW the Plaintiffs in the above styled matter and file this Response to Defendants' Motion to Dismiss showing the Court as follows:

**SUMMARY OF FACTS**

The Defendants argue in their Memorandum Brief in Support of Motion to Dismiss that this case is moot because the parade is over, Christmas is gone, and threats to the Plaintiffs' Constitutional Rights have been remedied because the temporary injunction issued by the Court required the City to rescind its exclusion of the Plaintiffs from the parade. Further, the Defendants argue that the Plaintiffs have failed to state a claim upon which relief may be granted. The Plaintiffs respectfully disagree with the premises asserted by the Defendants for the reasons set forth below.

Prattville Pride did host its first ever pride event in the City of Prattville in June 2024 that was an overwhelming success due to the planning and preparation of the members of Prattville Pride, something that earned Prattville Pride recognition on a national level. Admittedly, the City did allow the group to utilize a park on the outskirts of Prattville to host their event. However, that does not change the fact that when the City and its Mayor were challenged by constituents, the

City and the Mayor chose to exclude Prattville Pride from the Christmas Parade, even over the advice of their learned counsel that such action could lead to constitutional challenges. The actions of the City and the Mayor forced the group to initiate this action. The Defendants contend in their statement of facts that they did, in fact, comply with the Court's Order regarding the Christmas Parade. The Order of this Court required the City of Prattville to provide at least two law enforcement officers to escort Prattville Pride's float during the duration of the parade and to enforce the law as necessary against any person who engages in criminal conduct directed against Prattville Pride during the parade. Defendants assert that it is undisputed that the City complied with the order and assigned law enforcement officers to monitor the crowd and escort Prattville Pride throughout the duration of the parade. The Defendants further assert that the City provided six officers as well as drone surveillance overhead. It is hard to imagine how six officers as well as a drone did not see a man, in a jester hat, standing out on the parade route, balloon raised in hand, throwing a balloon at the participants. It is even harder to understand why these officers took no action after approaching the offender. The City justifies the failure of the officers to identify and arrest the alleged perpetrator by simply stating that the officers did not personally witness the offender throw the balloon. However, it is fairly common practice for warrants to be issued and arrests to be made for crimes that officers do not personally witness. If enforcement of the criminal code required an officer to personally witness a crime occurring to make such a crime actionable, lawlessness would certainly rule the day. The City's failure to dutifully obey the order of this Court in enforcing the law as necessary against any person who engages in criminal conduct directed against Prattville Pride during the parade further supports the contention of Prattville Pride that such disregard for the law is the practice of the City of Prattville and Mayor Gillespie, such that a live case or controversy does still exist.

**LEGAL ARGUMENT**

    I.  **LIVE CASE OR CONTROVERSY**

This matter is not due to be dismissed because there still exists a live case or controversy. Generally, "[w]hen events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief, the case is moot and must be dismissed." *Fla. Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dept. of Health and Rehabilitative Services*, 225 F.3d 1208, 1217 (11th Cir. 2000) (*citing Jews for Jesus, Inc. v. Hillsborough County Aviation Auth.*, 162 F.3d 627, 629 (11th Cir.1998)). However, whether a case or controversy exists is determined on a case-by-case basis. *BankWest. Inc. v. Baker*, 446 F.3d 1358 (11th Cir. 2006) (*citing GTE Directories Publ'g Corp. v. Trimen Am., Inc.*, 67 F.3d 1563, 1567 (11th Cir.1995)). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). "Mootness demands that there be something about the case that remains alive, present, real, and immediate so that a federal court can provide redress in some palpable way." *Cambridge Christian School, Inc. v. Fla. High School Athletic Association, Inc.*, 115 F.4th 1266, 1283 (11th Cir. 2024) (*quoting Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018). To sustain the jurisdiction of a federal court, "[t]he parties must continue to have a personal stake in the outcome of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1990). "The burden of demonstrating mootness 'is a heavy one.'" *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (*see United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1959). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Cambridge Christian School, Inc. v. Fla. High School Athletic Association, Inc.*, 115 F.4th 1266, 1284 (11th Cir. 2024) (*quoting Friends of the Earth,*

*Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000). In other words, the burden of proving mootness lies on the Defendants, not the Plaintiffs. The Plaintiffs undoubtedly still have personal stake and interest in the outcome of this case. The Plaintiffs should not be forced to return to the Court seeking court intervention to assert and protect their Constitutional rights every time they wish to participate in a city-wide event. The action taken by the City in this cause was blatantly unconstitutional and was done so after the Defendants had been warned by their legal counsel that taking such action would cause the City to face constitutional challenges. Their legal counsel specifically advised them not to engage in any type of prior restraint to speech, and the City blatantly disregarded the advice of their counsel. Plaintiffs clearly have a legally cognizable interest in the outcome of this case, as it will likely dictate the protection of their first amendment rights moving forward as it pertains to the Defendants. The Defendants' overt disregard for the Constitution even after receiving competent legal advice certainly should be considered by this Court when weighing whether the Defendants have met "the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Cambridge Christian School, Inc. v. Fla. High School Athletic Association, Inc.*, 115 F.4th 1266, 1284 (11th Cir. 2024) (*quoting Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)

Further, the Eleventh Circuit Court of Appeals has held that where the "original and amended complaints stated claims for damages on all counts," the plaintiff "maintains a sufficient personal stake in the outcome of [the] lawsuit to satisfy the case or controversy requirement." *Naturist Society Inc. v. Fillyaw*, 958 F.2d 1515, 1519 (11th Cir. 1992). In making this ruling, the court invalidated the appellee's argument that the case was moot because the appellant was granted a permit to demonstrate, and the demonstration occurred. *Id.* Much like in the case of *Naturist,*

the simple fact that Prattville Pride was ultimately allowed to participate in the parade after court intervention does not somehow negate or moot Plaintiffs' personal stake in the outcome of the lawsuit. The existence of a claim for damages is "clearly sufficient to make [an] action a case or controversy within the meaning of Article III of the Constitution." *Ammond v. McGahn*, 532 F.2d 325, 328 (3d Cir. 1976).

"[T]he mere voluntary cessation of a challenged practice does not render a case moot." *Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Authority*, 162 F.3d 627, 629 (11th Cir. 1998) (*citing County of Los Angeles*, 440 U.S. at 631. "Otherwise, a party could moot a challenge to a practice simply by changing the practice during the course of a lawsuit, and then reinstate the practice as soon as the litigation was brought to a close." *Jews for Jesus, Inc.*, 162 F.3d at 629. Jurisdiction may abate if the case becomes moot because "it can be said with assurance that 'there is no reasonable expectation' that the alleged violation will recur" and "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles*, 440 U.S. at 631 (*see United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1959); *DeFunis v. Odegaard*, 416 U.S. 312 (1974)). "When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *County of Los Angeles*, 440 U.S. at 631. Prattville Pride brought this action seeking an emergency temporary restraining order and preliminary injunction requiring the City of Prattville to rescind its decision to remove Prattville Pride from the parade, reinstate the group as parade participants, and provide the group with a police security detail throughout the parade. (Docs 1, 2). Although the Court granted this relief, Prattville Pride also included a claim for damages for all counts. (Doc. 1, p. 4 under Prayers for Relief). Therefore, even though the City of Prattville rescinded its decision to remove Prattville Pride from the parade

and the group was reinstated as parade participants, Prattville Pride maintains a personal stake in the outcome of this lawsuit sufficient to satisfy the case or controversy requirement because the original and amended complaints include a claim for damages on all counts. The claims for damages are "alive, present, real, and immediate." *See Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 733 (11th Cir. 2018). Further, Plaintiffs have since filed a Motion to Amend their Complaint seeking to include a request for a permanent injunction so as to ensure that future restrictions do not occur. The Defendants' motion to dismiss is due to be denied to address the Plaintiffs' claims for permanent injunction and damages.

Additionally, the availability of partial relief means the case is not moot, even though it might be too late to provide a "fully satisfactory remedy" for the original harm. *See Church of Scientology*, 506 U.S. at 13. The issue of preliminary injunctive relief can become moot even though "the case as a whole remains alive because other issues have not become moot." Univ. of Texas v. Camenisch, 451 U.S. 390, 394 (1981). The Supreme Court has rejected the theory that "mootness of a 'primary' claim requires a conclusion that all 'secondary' claims are moot." *Powell v. McCormack*, 395 U.S. 486, 499 (1969) (*citing Bond v. Floyd*, 385 U.S. 116 (1966)). Even though the request for temporary restraining order and preliminary injunction may be said to be the primary claim, the resolution of those claims does not require a conclusion that all "secondary" claims are moot. Additionally, many constitutional claims do not require proof of an actual injury, with nominal damages serving as the available relief. "[N]ominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of 'vindicating' rights whose deprivation has not caused actual, provable injury." Stachura, 477 U.S. at 308.

**II. 1983**

The Defendants contend that the Plaintiffs have failed to allege a valid §1983 Claim. However, relevant case law states "[a] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978).

"The interference with the rights of the plaintiff must be due to a violation for which the city government itself is responsible. Usually a council or commission will be the governing body to which responsibility must be attached. The council may violate rights of people by direct orders or by setting a course of action for city employees which, when followed by city employees, interferes with someone's rights. The council may set a course of action by its own promulgation or by the acceptance of a course set or conducted by city employees. In any event the course of conduct, whether formally declared or informally accepted, must be the policy of the city government if it is to be the basis of city liability." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984).

We view custom to be one form which policy takes and by which it is proven, and we use "policy" to include the pattern of conduct in actual practice that may be called "custom." §1983 itself uses "custom" and "usage" in describing the aegis of state law under which a person must have acted to be subject to § 1983 liability. Our present inquiry is a different matter. We assume here that the city government, where it acted, did so under color of state law. Our question is whether the city was the person who acted to inflict the wrong. We read the Supreme Court to

require that the offending policy (including policy embodied in custom) be the policy or custom of the city government, i.e., the governing body which acts for the city, if that city is to be subject to liability as an actor under § 1983. The Court in *Monell* rejected vicarious liability of the governing body of the city and concluded that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Bennett v. City of Slidell*, 728 F.2d 762, 767 (5th Cir. 1984) (quoting Monell, 436 U.S. at 691)).

The Supreme Court in Monell wrote that practices of officials may become "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *768 436 U.S. at 690–91, 98 S.Ct. at 2036 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)). In Adickes, a white school teacher was denied service at a lunch counter because she was in the company of blacks. The Court held that Adickes presented evidence of a claim under § 1983 for a deprivation of rights because service was refused under color of law, i.e., a state-enforced custom of segregation in public eating places. Adickes, 398 U.S. at 173–74, 90 S.Ct. at 1617. In describing "custom or usage," the Court used such phrases as "persistent and widespread ... practices," "systematic maladministration" of the laws, practices that are "permanent and well settled," and "deeply embedded traditional ways of carrying out ... policy." Id. In the context of the question of city liability for such persistent conduct of its employees, i.e., conduct that has become a traditional way of carrying out policy and has acquired the force of law, the persistent conduct must be attributable to the source of policy or law of the city, its governing body. For example, in a Tenth Circuit case the county's maintenance of substandard detention facilities for the mentally ill, after attention of the county commissioners had been repeatedly called to the inadequacy of the facilities, constituted custom or policy of the county. Littlefield v.

Deland, 641 F.2d 729 (10th Cir.1981). Sufficient duration or frequency of abusive practices, or other evidence, must warrant a finding of knowledge on the part of the governing body that the objectionable conduct has become customary practice of city employees. Where the violations are flagrant or severe, the fact finder will likely require a shorter pattern of the conduct to be satisfied that diligent governing body members would necessarily have learned of the objectionable practice and acceded to its continuation. Knowledge of a continuing practice of city employees may be attributed to the governing body in one of two ways. Actual knowledge may be shown by such means as discussions at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or of a high degree of publicity. *Bennett v. City of Slidell*, 728 F.2d 762, 767–68 (5th Cir. 1984). In the case at hand, there has been discussion as nauseum about statements and discussions at the city council meeting which led to the ultimate removal of Plaintiffs from the Christmas parade. Further, Plaintiffs strongly believe that there is likely more evidence to support a finding that the removal and exclusion of groups based upon unpopular but still constitutional speech is the custom and practice of the City of Prattville.

Liability must rest on official policy, meaning the city government's policy and not the policy of an individual official. The policy is that of the city, however, where it is made by an official under authority to do so given by the governing authority. Hence, culpable policy is attributable to the governing body of the city where the policy was made by an official to whom the governing body had given policymaking authority. Bennett v. City of Slidell, 728 F.2d 762, 769 (5th Cir. 1984). The City adopted a policy certainly in this case that was flagrantly

unconstitutional after lengthy discussion among city officials. That leaves us with the question of whether there was a persistent practice of unequal application of the law in this city for which we can attribute responsibility to the governing body. *Bennett v. City of Slidell*, 728 F.2d 762, 770 (5th Cir. 1984).

Plaintiffs who seek to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. *61 Monell, 436 U.S., at 691, 98 S.Ct. 2018; see id., at 694, 98 S.Ct. 2018. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. See ibid.; Pembaur, supra, at 480–481, 106 S.Ct. 1292; Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–168, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). These are "action[s] for which the municipality is actually responsible." Pembaur, supra, at 479–480, 106 S.Ct. 1292. Connick v. Thompson, 563 U.S. 51, 60–61 (2011) (citing Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)). Plaintiffs contend that the decision of the Defendants to remove the Plaintiffs from parade and restrict their First Amendment rights was an action pursuant to official municipal policy. The decision was made by the Mayor and the City of Prattville and its appears that the practice of the City to exclude those who are different is becoming persistent and pervasive.

For the reasons stated above, the Plaintiffs aver that this matter is not due to be dismissed as there still exists a live controversy and the Plaintiffs maintain a personal stake in the outcome of the lawsuit. Further, Plaintiffs have stated a claim against Defendants that is actionable and supported by facts, circumstances and law. Accordingly, Plaintiffs request that Defendants' Motion to Dismiss be denied.

## STATEMENT AS PER ORDER (DOC 28)

That since the Prattville Christmas Parade, Prattville Pride has applied to enter a float, that said application was granted, and Prattville Pride's float participated in said City of Prattville's Mardi Gras Parade on February 1, 2025.

Respectfully submitted this the 13th day of February 2025.

| | |
|---|---|
| /s/ John T. Winans | /s/ Julia D. Collins |
| John T. Winans (WIN059) | Julia D. Collins (COL159) |
| Attorney for the Plaintiff | Attorney for the Plaintiff |
| ALA BAR NO: 3456E13A | ALA BAR NO: 7376H71S |

OF COUNSEL:
The Harris Firm LLC
60 Commerce Street, Ste. 370
Montgomery, AL 36104
jtwinans@theharrisfirmllc.com
juliacollins@theharrisfirmllc.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of February 2025 I electronically filed the foregoing with the Clerk of Court using the electronic filing system which will send notification of such filing to all parties.

**Andrew Lee Odom**
The Cleveland Firm, LLC
707 McQueen Smith Road South
Prattville, AL 36066
334-365-6266
Fax: 334-365-6818
Email: andrew@clevelandriddle.com

**Ashley Tidwell Britton**
Holtsford Gilliland Hitson Howard Stevens Tuley & Savarese
4001 Carmichael Road, Suite 300
Montgomery, AL 36106
334-215-8585
Fax: 334-215-7101
Email: abritton@hglawpc.com

**Ricky Allen Howard**
Holtsford Gilliland Hitson Howard Stevens Tuley & Savarese
4001 Carmichael Road
Ste 300
Montgomery, AL 36106

334-215-8585
Email: rhoward@hglawpc.com

**Robert Edwin Riddle**
Law Office of Rob Riddle LLC
119 1st Street
Prattville, AL 36067
334-356-3239
Fax: 334-356-3241
Email: rob@riddlelawllc.com

/s/ John T. Winans                                   /s/ Julia D. Collins
John T. Winans (WIN059)                              Julia D. Collins (COL159)