## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| PRATTVILLE PRIDE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 2:24-cv-00786-RAH-KFP |
| | ) | |
| CITY OF PRATTVILLE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE AND OBJECTION TO PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

COME NOW the Defendants, the City of Prattville, Alabama ("City") and Bill Gillespie, Jr. ("Mayor"), and file this objection to Prattville Pride's *Motion for Leave to Amend Complaint* (Doc. 25). Defendants object to Prattville Pride's motion because the proposed amended complaint (Doc. 25-1) would be futile. The case is moot, and Prattville Pride's proposed amended complaint, like its predecessor, fails to state a valid claim against Defendants. Accordingly, Defendants respectfully request that the Court deny Prattville Pride's *Motion for Leave to Amend Complaint* and further request that the Court dismiss all claims asserted against Defendants. In support of their objection, Defendants state as follows:

1

## I.   <u>PROCEDURAL HISTORY</u>

Plaintiffs Prattville Pride, Adam Hunt, and Caryl Lawson[1] (collectively, "Prattville Pride") commenced this matter on December 5, 2024, by filing a counseled complaint (Doc. 1) pursuant to 42 U.S.C. § 1983 and *Motion for Temporary Restraining Order and Preliminary Injunction* (Doc. 2) against the City and Mayor.  The filings alleged that on December 5, 2024, the City and Mayor had removed Prattville Pride from the City's "Christmas in Prattville" Christmas Parade, which was scheduled to begin at 7:00 pm the following day, after Prattville Pride reported to the City's Police Chief that it had received threats "referencing harmful actions to be taken against [the group] and [their] float during the [subject] parade" earlier that morning and, therefore, required their own security detail leading up to and during the parade.  (Doc.1, ¶¶ 10-11; Doc. 2, ¶¶ 4).

The filings further alleged that the group's First Amendment right to free speech and Fourteenth Amendment right to equal protection "*[would] be violated if [Prattville Pride's] participation in the 'Christmas in Prattville Christmas Parade' [was] not allowed*." (Doc. 1, Count III; *see also* Doc. 2, ¶¶ 6-7) (emphasis added). To *prevent* these alleged constitutional violations from occurring, Prattville Pride sought an emergency restraining order and injunction requiring the City to rescind

---

[1] Adam Hunt is the President of Prattville Pride, and Caryl Lawson is the Vice President of Prattville Pride.

its removal decision, reinstate the group as parade participants, and provide the group with police security detail throughout the course of the parade. (*Id.*).

On the morning of the parade, this Court held a telephone hearing on Prattville Pride's motion for emergency relief. (Doc. 9).  During the hearing, the City learned for the first time that, in actuality, there were "no legitimate concerns… to public safety." (Doc. 9, p. 2).  After the hearing concluded, the Court entered an order granting the motion. (*Id.*).  Specifically, the order enjoined the City "from prohibiting Prattville Pride from participating in the parade" and instructed the City to "rescind its directive removing Prattville Pride from the subject Christmas parade" and to "provide at least two law enforcement officers to escort Prattville Pride's float during the duration of the parade and to enforce the law as necessary against any person who engages in criminal conduct directed against Prattville Pride during the parade." (*Id.*, pp. 6-7).

On December 9, 2024, the Court entered an order (Doc. 11) stating that the subject parade had concluded and directing Prattville Pride to "show cause on or before noon, December 13, 2024 as to why this case should not be dismissed for lack of a live case or controversy." Prattville Pride filed their *Response to Show Cause Order* (Doc. 12) on December 13, 2024.

In their response, Prattville Pride admitted that there was one, single potentially harmful event, i.e. the group's temporary removal from the Christmas

parade, and that event "expired" on December 6, 2024, when Prattville Pride participated in the parade. (*Id.*, p. 3). In other words, events occurred subsequent to the filing of this lawsuit that resolved the controversy giving rise thereto. Therefore, the case was moot and due to be dismissed. *See Soliman v. United States*, 296 F.3d 1237, 1242 (11th Cir. 2002) ("[I]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed. In fact, dismissal is required because mootness is jurisdictional"); *see also Warren v. DeSantis*, No. 23-10459, at *4 (11th Cir. Jan. 10, 2025) (holding that plaintiff's requests for injunctive and declaratory relief to be reinstated to office expired with his term of office and, therefore, were moot) (citing *See Aaron's Priv. Clinic Mgmt. v. Berry*, 912 F.3d 1330, 1335 (11th Cir. 2019) (concluding that requests for declaratory and injunctive relief regarding a statute that imposed a temporary moratorium on the licensing of new narcotic treatment programs were moot when the moratorium expired).

Nevertheless, Prattville Pride argued against dismissal of their lawsuit, claiming that exceptions to the mootness doctrine applied – that is, that (1) there existed a "reasonable expectation" the alleged violation will occur again, and (2) "[g]iven the short time between the initiation of the action and the event, there was not sufficient time to fully litigate the issue prior to the expiration of the harmful act." (Doc. 12, pp. 2-3). Accordingly, Prattville Pride contended that a live case or

controversy still existed between the parties arising from the Christmas parade that needed to be resolved by the Court. (*Id.*, p. 3).

First, Prattville Pride argued that there is a reasonable expectation the alleged violation will occur again because the City holds other events throughout the year, such as its annual Mardi Gras parade. (*Id.*, p. 2). Prattville Pride speculated that "[w]ithout further litigation [of this lawsuit] and assessment of damages and other relief, there is a reasonable expectation that the City will" attempt to exclude Prattville Pride from participating in those events. (*Id.*). In support of this argument, Prattville Pride pointed to the City's alleged "behavior… prior to, during, and… following the [subject Christmas] parade." (*Id.*, pp. 2-3). Regarding the City's alleged behavior <u>prior</u> to the Christmas parade, Prattville Pride speculated that the City *would have* "disregarded" their "constitutionally protected rights" had the Court not intervened and issued the emergency order requiring the City to rescind its removal decision and reinstate the group as participants in the Christmas Parade. (*Id.*).

As to the City's behavior <u>during</u> the Christmas parade, Prattville Pride argued that the City failed to fully comply with the Court's mandate that it "provide at least two law enforcement officers to escort Prattville Pride's float during the duration of the parade and to enforce the law as necessary against any person who engages in criminal conduct directed against Prattville Pride during the parade." (*Id.*). Prattville

Pride admitted that the City provided police escorts, but the group was not satisfied with the officers' enforcement of the law. (*Id.*).  Prattville Pride contended that, during the parade, an unidentified participant was struck by a water balloon. (*Id.*, p. 2).  The police escorts were made aware of the alleged incident and searched the crowd to locate the alleged offender.  (*Id.*).  Prattville Pride claimed that the officers "made contact" with the alleged offender but failed to identify and arrest him. (*Id.*).  Because the officers failed to "[identify] the man in question," Prattville Pride argued that "no action has been taken by the City nor can be taken by the participant." (*Id.*).  According to Prattville Pride, the officers' conduct amounted to a failure on the City's part "to take affirmative action in protecting the rights of Prattville Pride throughout the parade," and created "a reasonable expectation that Prattville Pride will continue to face the same discriminatory behavior by the City." (*Id.*, pp. 2-3).

Regarding the City's behavior <u>following</u> the Christmas parade, Prattville Pride simply stated "[t]here has additionally been no quantitative action taken by the City to dissuade or otherwise quash the behavior of the bad actors who have made threats that ultimately led to the exclusion of the Prattville Pride organization from the festivities."  (Doc. 12, p. 2).  Prattville Pride failed to identify the additional "quantitative action" it believes the City should have taken and failed to take after the parade had concluded.

6

Second, Prattville Pride argued that a live case or controversy still exists because, "[g]iven the short time between the initiation of the action and the event, there was not sufficient time to fully litigate the issue prior to the expiration of the harmful act." (*Id.*, p. 3). In support of this argument, Prattville Pride reasoned that their requests for nominal, compensatory, and punitive damages and attorneys' fees and expenses have not yet been addressed by the Court and, therefore, sustains this lawsuit. (*Id.*).

On December 19, 2024, the Court held another telephone conference to discuss Prattville Pride's *Response to Show Cause Order*. (Docs 12, 13, 14). During the hearing, the Court asked the parties' counsel whether the City provided Prattville Pride with law enforcement protection during the parade. Counsel for the City stated, without objection from Prattville Pride, that Prattville Pride's float was escorted by six police officers – one flanking each side of the float and four SWAT team members following behind – as well as a drone flying overhead. The City also placed undercover officers inside the crowd. No officers observed any water balloons being thrown at or striking a parade participant, or any other potentially criminal activities. The officers escorting Prattville Pride's float were told by a member of the group that a participant had been hit by a water balloon. Those officers entered the crowd to search for the alleged offender. However, they were

unable to find and identify the "man" described in Prattville Pride's show cause response.

Further discussion ensued between the Court and counsel regarding whether Prattville Pride has suffered any injuries and whether there still exists a live case or controversy between the parties. At the close of the hearing, the Court instructed Defendants to file a formal response to Prattville Pride's complaint (Doc. 1). The Court allowed Defendants until January 16, 2025 to file their response. (Doc. 16).

On January 16, 2025, Defendants filed a *Motion to Dismiss for Failure to State a Claim, Motion to Dismiss for Lack of Jurisdiction* (Doc. 21) and supporting memorandum (Doc. 22), arguing that Prattville Pride's complaint is due to be dismissed because (1) the case is moot and, therefore, the Court lacks subject-matter jurisdiction; and because (2) the complaint fails to assert a valid § 1983 claim against the Mayor and the City.

Regarding mootness, Defendants noted that "the [subject] Christmas Parade has concluded and any threat to Prattville Pride's First Amendment right to free speech and Fourteenth Amendment right to Equal Protection arising therefrom was remedied and prevented from ever occurring." (Doc. 22, p. 13) (cleaned up).

> "Prattville Pride brought this action seeking [emergency relief] requiring the City to rescind its removal decision, reinstate the group as parade participants, and provide the group with a police security detail throughout the course of the parade. The Court granted this relief, and Prattville Pride participated in the Christmas parade with police protection. (Docs 9, 11). There is

8

> no further meaningful relief left to be granted by the Court, and any decision on the merits of [Prattville Pride's] claims would be an [impermissible] advisory opinion."

(*Id.*, pp. 13-14) (internal citations and quotation marks omitted).

"Although there is an exception to the mootness doctrine when the action being challenged by the lawsuit is capable of being repeated and evading review, [the Eleventh Circuit] ha[s] held that this exception is narrow, and applies only in exceptional situations. In particular, the exception can be invoked *only* when (1) there [is] a reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party, and (2) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration." (*Soliman v. United States*, 296 F.3d at 1242-43) (emphasis added); (*see also* Doc. 22, pp. 14-16).

Here, the record does not reflect a reasonable expectation or a demonstrated probability that the same controversy will recur, or that the duration of the challenged action was too short to have been fully litigation prior to its cessation.

> "For Prattville Pride to be subject to the same action again, the following course of events would need to occur: (1) the group must apply to a parade sponsored by the City; (2) the City must approve Prattville Pride's application to participate in the parade; (3) Prattville Pride [must] receive threats of harmful actions related to its involvement in the parade; (4) Prattville Pride must report safety concerns based on those threats of harmful action and request its own police protection the day before the parade is scheduled to begin; and (5) the City, without taking further action, must remove Prattville Pride from the parade.

> There are no plausible allegations that suggest the aforementioned sequence of events will recur. To the contrary, [the record reflects that] Prattville Pride has successfully worked in collaboration with the City on at least one other occasion, i.e., its pride event in June 2024. (Exhibit 1: 1:19:04 - 19:53). While that event was not sponsored by the City, it was held at a City park, for which the City has authority to grant and revoke permits. (*Id.*). That event occurred without issue. (*Id.*)."

(*Id.*, pp. 8-9) (citing *See Warren v. DeSantis*, No. 23-10459, at *5 (11th Cir. Jan. 10, 2025) (holding that plaintiff who was removed from office by Florida's governor "(1)… must run for another public office for which Florida's governor has the authority to suspend the officeholder, (2)… must win that election, and (3) Florida's governor must suspend him from office" to defeat dismissal on grounds of mootness)).

Prattville Pride's argument that it may be excluded from future events, without more is "pure speculation" and not enough to overcome mootness. (Doc. 22, pp. 8-9, 16) (quoting *Soliman v. United States*, 296 F.3d at 1243) ("the remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time."

Additionally, Prattville Pride's argument regarding the City's alleged failure to fully comply with the Court's emergency injunction and restraining order also failed. The City provided more police protection than required by the Court's order.

10

(Doc. 9, pp. 6-7; Doc. 22, pp. 9-10).  Moreover, Prattville Pride's contention that the alleged conduct of the officers involved in the supposed "water balloon incident" during the parade was discriminatory or otherwise illegal is not based on legal authority. (*Id.*).  Further, even if the Court were to find (1) that the officers failed to take appropriate action and (2) this failure may amount to a support a legally cognizable claim, such a claim would exist only between the unnamed individual allegedly struck by the water balloon, the unnamed bystander who allegedly threw the water balloon, and the unnamed officers.  (*Id.*, pp. 10-11).

In other words, no further cause of action exists between the current Plaintiffs (i.e., Prattville Pride, Caryl Lawson, and Adam Hunt) and the current Defendants (i.e., the City and the Mayor) arising from Prattville Pride's removal from the Christmas Parade. (*Id.*).  Instead, "new plaintiffs, defendants, and causes of action would need to be added to this suit; thus, changing the entire nature of the case." (*Id.*); (*See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694, (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983"); (*see also Lewis v. City of West Palm Beach*, 561 F.3d

1288, 1293 (11th Cir. 2009) ("A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom").

Prattville Pride's argument that the City had not taken any "quantitative action... to dissuade or otherwise quash the behavior of the bad actors who have made threats that ultimately led to the exclusion of the Prattville Pride organization from the festivities" following the subject parade failed, as well. The argument lacked any substance, was misleading, and was puzzling, as Defendants had done exactly what Prattville Pride asked and the Court had ordered it to do. (Doc. 22, p. 9; Doc. 9, pp. 6-7).

Finally, Prattville's Pride's argument "that there was not sufficient time to fully litigate the issue prior to the expiration of the harmful act" because the Court has not yet addressed the group's requests for various damages, fees, and expenses failed because "Prattville Pride... has not alleged any facts to support a claim for compensatory or nominal damages...; the law prohibits an award of punitive damages against a municipality; and Prattville Pride's request for attorney's fees alone is not enough for this court to retain subject matter jurisdiction over this action." (*Id.*, p. 11) (citations and quotations omitted).

> "In short, Prattville Pride has not alleged an imminent or even possible threat of future harm.    [T]here was one, single potentially harmful event, i.e. the [group's] temporary removal from the parade, and that event 'expired' on December 6, 2024, when Prattville Pride participated in the Christmas parade. Stated differently, when the parade concluded, so did this action."

12

(*Id.*).

"'The plaintiff bears the burden of establishing that [an] exception applies.'" (*Id.*, p. 16) (quoting *Warren v. DeSantis*, at *5 (citing *Hall v. Alabama*, 902 F.3d 1294, 1297-98 (11th Cir. 2018)). "Because, for the reasons set forth above, there are no plausible allegations that suggest an on-going threat of future harm, Prattville Pride fails to meet this burden. Accordingly, no live case or controversy exists, and this case is due to be dismissed." *Id.*

In addition to mootness, Defendants maintained that this lawsuit is due to be dismissed because the complaint does not allege a plausible claim upon which relief may be granted against the Defendants under 42 U.S.C. § 1983. (*Id.*). Prattville Pride commenced this lawsuit pursuant to §1983, alleging violations of the First and Fourteenth Amendments to the United States Constitution against the Mayor and the City. (Doc. 1). However, the complaint fails to state a valid claim against the Mayor, "because the Mayor is sued solely in his official capacity, and the City is a named defendant. Accordingly, the claims against the mayor are redundant and unnecessary" and due to be dismissed as a matter of law. (Doc. 22, pp. 16-18) (citing *Busby*, *v. City of Orlando*, 931 F.2d 764, 776 & 782 (11th Cir. 1991)(affirming a directed verdict in favor of defendant municipal officers sued pursuant to 42 U.S.C. §1983 and named in their official capacities when the city was also a named

defendant because keeping the official capacity claims was "redundant and possibly confusing to the jury").

Likewise, Prattville Pride's complaint fails for lack of a valid §1983 claim against the City because Prattville Pride did not suffer a constitutional violation, and the complaint failed to allege "that the City has an unconstitutional custom or policy that was the moving force behind any alleged violation." (*Id.*, pp. 18-20) (citing *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) ("To impose section 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation")). Accordingly, in addition to the lack of a live cause or controversy, Defendants argued Prattville Pride's lawsuit against the Mayor and City was due to be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).

On January 17, 2025, the Court entered an Order requiring Prattville Pride to respond to Defendants' motion to dismiss by February 6, 2025. (Doc. 23). On February 4, 2025, Prattville Pride filed a *Motion for Leave to Amend Complaint* (Doc. 25), along with a copy of the proposed amended complaint (Doc. 25-1) and a *Motion for Attorney Fees* (Doc. 26). "The new complaint maintains the counts and allegations against the same defendants[sic] from the original complaint." (Doc. 25,

p. 1).  The only proposed change is the type of relief sought by Prattville Pride.  That is, Prattville Pride seek a permanent injunction requiring the City and its "officers, agents, servants, employees and attorneys and those acting in concern for the Defendant's[sic]" to permit Prattville Pride to participate in all "current and future" City-sponsored events and to provide the group police protection at those events. (Doc. 25, p. 1; Doc. 25-1, Count III).  Prattville Pride assert that allowing them to amend their complaint to request a permanent injunction "would serve justice and promote judicial efficiency," and "there would be no substantial or undue prejudice, bad faith, undue delay, or futility." (*Id.*).  Prattville Pride do not allege in their *Motion for Leave to Amend Complaint* that this proposed amendment would survive a motion to dismiss. (*Id.*).

On February 6, 2025, the Court entered an Order (Doc. 29) stating that Prattville Pride must still respond to Defendants' motion to dismiss and extended that deadline to February 13, 2025.  The Court further ordered that Prattville Pride's response to the motion to dismiss "include a statement containing the following information: (a) Whether Prattville Pride has applied to enter a float in any parade since the Prattville Christmas Parade; (b) Whether that application was granted or denied; and (c) Whether Prattville Pride participated in that parade with a float." (Doc. 29).

On February 13, 2025, Prattville Pride filed their *Response to Defendant's Motion to Dismiss*. (Doc. 30).  Prattville Pride's *Response to Defendant's Motion to Dismiss* ignored Defendants' main arguments in favor of dismissal: (1) that the record lacks any plausible allegations to suggest the same course of events (i.e., that Prattville Pride will apply to a City-sponsored parade, that the City will approve their application, that Prattville Pride will receive threats of harmful actions related to its involvement in the parade, that Prattville Pride will report safety concerns based on those threats and request their own police protection the day before the parade is scheduled to begin, and the City will remove Prattville Pride from the parade without taking any further action) will occur again; (2) that Prattville Pride have not alleged any facts to support a claim for compensatory or nominal damages…; the law prohibits an award of punitive damages against a municipality; and Prattville Pride's request for attorney's fees alone is not enough for this court to retain subject matter jurisdiction over this action; (3) that Prattville Pride's claims against the Mayor are due to be dismissed as a matter of law because he is sued solely in his official capacity; (4) that Prattville Pride's complaint admits that Prattville Pride have not suffered any constitutional violations because they were able to participate in the subject Christmas parade; and (5) that Prattville Pride's complaint does not contain any allegations that the City had an unconstitutional policy or custom and that policy

16

or custom was the moving force behind the alleged constitutional violation. (Doc. 22).

However, Prattville Pride's *Response to Defendant's Motion to Dismiss* did admit that the group applied and was approved to have a float in the City's "Mardi Gras Celebration" parade on February 1, 2025.  (Doc. 30, p. 11).  This is the same parade Prattville Pride claimed they risked exclusion from, absent further intervention from the Court, in their *Response to Show Cause Order*. (Doc. 12, p. 2). Yet, Prattville Pride participated in the "Mardi Gras Celebration" parade with police escort and without issue or need for Court intervention.  (*See Affidavit of Mark Thompson,* attached hereto as "Defendants' Exhibit 1").

## II.    <u>LEAVE TO AMEND SHOULD BE DENIED BECAUSE IT WOULD BE FUTILE.</u>

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Rule 15(a)(1), Fed. R. Civ. P.  In all other cases, a party may amend its pleading only with the opposing party's written consent or leave of court. Rule 15(a)(2), Fed. R. Civ. P.; *Espey v. Wainwright*, 734 F.2d 748, 750 (11th Cir. 1984).

Here, Prattville Pride does not argue in its *Motion to Amend Complaint* that they fall under either of the two categories outlined in 15(a)(1).  Prattville Pride also

17

admit that they have not obtained Defendants' consent to amend their complaint. Instead, Prattville Pride seek to amend their complaint through leave of court.

It is within the district court's discretion whether to grant or deny leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The focus of Rule 15(a) is to allow parties to have their claims heard on the merits, and district courts should liberally grant leave to amend when 'the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief.'" *McGowan v. Sanofi-Aventis U.S. LLC*, No. 3:23-cv-1335-HES-LLL, 2024 U.S. Dist. LEXIS 108272, at *3 (M.D. Fla. June 17, 2024) (quoting *In re Engle Cases*, 767 F.3d 1082, 1108 (11th Cir. 2014) (in turn quoting *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)). "But leave to amend is not an 'automatic right.'" *Id.* (quoting *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (citation omitted). "The court may deny leave 'where there is substantial ground for doing so ....'" *Id.*

"Substantial reasons justifying a denial include 'undue delay, bad faith, dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Landon v. Agatha Harden, Inc.*, 6 F.Supp.2d 1333, 1335 (M.D. Ala. 1998) (quoting *Foman*, 371 U.S. at 182). Therefore, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004) (holding that "denial of leave

to amend is justified by futility when the complaint as amended is still subject to dismissal").

A proposed amendment is futile when the "complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007); *see also Raley v. United States,* 2024 U.S. Dist. LEXIS 105227, 2024 WL 2982038, at *3 (noting that, while defective allegations of jurisdiction generally "may be amended, upon terms, in the trial or appellate courts[,]" an opportunity to amend to cure a jurisdictional defect "is not required . . . where the amendment would be futile"); *Smith v. City of Johns Creek,* No. 24-10815, 2025 U.S. App. LEXIS 1871, at *12 (11th Cir. Jan. 28, 2025) (denying pro se plaintiffs' motion for leave to file a first amended complaint because the proposed changes "would not affect the conclusion that the plaintiffs failed to plead that [defendant's] policy or custom was the 'moving force' behind the alleged constitutional violation"; in other words, "'their proposed amendment would still be futile' because adequate allegations of *Monell* liability would still be lacking").

In the present case, Prattville Pride's request to amend should be denied as futile because the case is moot. "[A]ny threat to Prattville Pride's First Amendment right to free speech and Fourteenth Amendment right to Equal Protection" related to

the subject Christmas parade giving rise to this lawsuit has already been "remedied

and prevented from ever occurring." (Doc. 22, p. 13) (cleaned up).

> "Prattville Pride brought this action seeking [emergency relief] requiring the City to rescind its removal decision, reinstate the group as parade participants, and provide the group with a police security detail throughout the course of the parade. The Court granted this relief, and Prattville Pride participated in the Christmas parade with police protection. (Docs 9, 11). There is no further meaningful relief left to be granted by the Court, and [the case is moot]."

(*Id.*, pp. 13-14) (internal citations and quotation marks omitted).

Prattville Pride's sole proposed amendment to the complaint seeking a

permanent injunction against Defendants does not cure this jurisdictional defect

because the record does not support a claim for permanent injunctive relief against

Defendants. "To receive a permanent injunction, a plaintiff must show:

> (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

*Sprint Commc'ns, Inc. v. Calabrese*, No. 22-11717, 2024 U.S. App. LEXIS 8083, at

*11 (11th Cir. Apr. 4, 2024) (citing *Angel Flight of Ga., Inc. v. Angel Flight Am.,

Inc.*, 522 F.3d 1200, 1208 (11th Cir. 2008)). Yet, Prattville Pride have not suffered

any injuries.

"Any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action, such as a constitutional violation, a trespass, or a nuisance." *Alabama v. United States Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005). "For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)." *Id.* (citation omitted). "An injunction is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed - if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise." *Id.* (internal quotation marks and citation omitted). "However, because it is an extraordinary remedy, it is available not simply when the legal right asserted has been infringed, but only when that legal right has been infringed by an injury for which there is no adequate legal remedy[,] and which will result in irreparable injury if the injunction does not issue." *Id.* (citation omitted). "Thus, to obtain a permanent injunction, a party must show: (1) that he has prevailed in establishing the violation of the right asserted in his complaint; (2) there is no adequate remedy at law for the violation of this right; and (3) irreparable harm will result if the court does not order injunctive relief." *Id.* at 1128 (citations omitted).

For the reasons stated herein and in Defendants' supporting memorandum (Doc. 22), Prattville Pride have not shown that they have suffered a constitutional

violation, and the proposed amended complaint does not allege that one has occurred.  Instead, the proposed amended complaint, like the original complaint, simply states that a constitutional violation "*will occur*" if Prattville Pride is not allowed to participate in the City's Christmas parade. (Doc. 25-1, ¶27).  Of course, we now know that potential harm was avoided.

There also are no plausible allegations that suggest an on-going threat of future irreparable harm to Prattville Pride.  The record is clear that Prattville Pride's temporary exclusion from the subject Christmas parade was a singular event, caused by unique set of circumstances that do not have a reasonable expectation of recurrence. (Doc. 22, p. 8; *see also* Doc. 30, n. 2).  To the contrary, Prattville Pride and the City have an established history of successful collaborations.  Before the subject Christmas parade, Prattville Pride held a very successful pride event at one of the City's parks in June 2024. (Doc. 22; Doc. 30).  Following the subject Christmas parade, Prattville Pride participated in the City's "Mardi Gras Celebration" parade without incident and without requiring further Court intervention. (Defendants' Exhibit 1; Doc. 30, p. 11).  Based on this history, it cannot reasonably be said that the case at hand is anything more than a one-off incident arising from a miscommunication or misunderstanding between otherwise synergistic parties.

Because the record does not support a claim for permanent injunctive relief against Defendants, Prattville Pride's proposed amendment is due to be denied as futile. *See Cockrell*, 510 F.3d at 1310 (11th Cir. 2007); *see also Raley*, 2024 U.S. Dist. LEXIS 105227, 2024 WL 2982038, at *3.

The proposed amendment is also due to be denied as futile because it still fails to state a valid §1983 claim against Defendants.  Prattville Pride admit that they have not attempted to amend the complaint to address the defects outlined in Defendants' motion to dismiss regarding Plaintiff's §1983 claims against the Mayor and the City. (Doc. 25, p. 1). In other words, Prattville Pride's proposed amended complaint still fails to allege individual capacity claims against the Mayor; an underlying constitutional violation; and an unconstitutional policy or custom by the City that was the moving force behind the alleged constitutional violation. (Doc. 22, pp. 16-20).

Because the proposed amended complaint still lacks adequate allegations of §1983 liability against the Mayor and the City, Prattville Pride's motion for leave to amend their complaint is futile and due to be denied, as it still would be properly dismissed.  *See, e.g., Smith v. City of Johns Creek,* No. 24-10815, 2025 U.S. App. LEXIS 1871, at *12 (11th Cir. Jan. 28, 2025) (denying pro se plaintiffs' motion for leave to file a first amended complaint because the proposed changes "would not affect the conclusion that the plaintiffs failed to plead that [defendant's] policy or

custom was the 'moving force' behind the alleged constitutional violation"; in other words, "'their proposed amendment would still be futile' because adequate allegations of *Monell* liability would still be lacking").

## **CONCLUSION**

The claims in the proposed amended complaint (Doc. 25-1) against these Defendants are deficient for the reasons discussed above. Prattville Pride should not be granted leave to file proposed amended complaint against these Defendants because allowing this amendment would be futile. Accordingly, Defendants respectfully request this Court enter an Order denying Prattville Pride's *Motion for Leave to Amend Complaint.* (Doc. 25).

Respectfully submitted this the 19th day of February, 2025.

/s/ Rick A. Howard
Rick A. Howard (ASB-9513-W79R)
Ashley Tidwell Britton (ASB-3974-O48M)
*C*ounsel for Defendants

**OF COUNSEL:**
HOLTSFORD GILLILAND HITSON HOWARD
      STEVENS TULEY & SAVARESE, P. C.
Post Office Box 4128
Montgomery, Alabama 36103-4128
334-215-8585
rhoward@hglawpc.com
abritton@hglawpc.com

/s/ Andrew L. Odom
Andrew L. Odom
Attorney for Defendants

OF COUNSEL:
*The Cleveland Firm, LLC*
707 McQueen Smith Road South
Prattville, AL 36066
334-365-6266
Fax: 334-365-6818
Email: andrew@clevelandriddle.com

*/s/ Robert E. Riddle*
Robert E. Riddle
Attorney for Defendants

OF COUNSEL:
Law Office of Rob Riddle LLC
119 1st Street
Prattville, AL 36067
334-356-3239
Fax: 334-356-3241
Email: rob@riddlelawllc.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this, the 19th day of February, 2025, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I have emailed or mailed a copy of the foregoing pleading to the following parties:

Julia Dianne Collins
John Tyler Winans
*The Harris Firm LLC*
60 Commerce Street
Suite 370
Montgomery, AL 36105
334-782-9938
Fax: 888-270-6762
Email: stevenharris@theharrisfirmllc.com
(***Counsel for Plaintiffs***)

on this the 19th day of February, 2025.

*/s/ Rick A. Howard*
OF COUNSEL

26