IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| PRATTVILLE PRIDE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:24-cv-00786-RAH-KFP |
| | ) | [WO] |
| | ) | |
| CITY OF PRATTVILLE, | ) | |
| ALABAMA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Pending before the Court is the Defendants' *Motion to Dismiss for Failure to State a Claim, Motion to Dismiss for Lack of Jurisdiction* (doc. 21) filed on January 16, 2025, and the Plaintiffs' *Motion to Amend/Correct 1 Complaint* (doc. 25) filed on February 4, 2025.  The motions are fully briefed and ripe for decision.  For the reasons that follow, the Defendants' motion will be granted in part, and the Plaintiffs' motion will be denied.

### FACTS AND PROCEDURAL HISTORY

Every winter, the City of Prattville sponsors the "Christmas in Prattville Christmas Parade" which is open to the public. Every parade participant must formally apply, pay an application fee, and obtain approval from the City.[1] Participation in the parade is subject to compliance with the City's conditions and restrictions.

---

[1] The City of Prattville and the Mayor will be collectively referred to as "the City."

Prattville Pride is a non-profit organization that promotes the acceptance and normalization of members of the LGBTQ+ community. In the Fall of 2024, Prattville Pride wanted to enter a float in the City's Christmas parade.  It followed the City's rules in that it paid the application fee, submitted an application—in fact, the very first application by any participant—for the parade, and was approved by the City.

Prattville Pride's participation in the Christmas parade, however, was met with increasing opposition by community members as the parade date approached. During a city council meeting the week before the parade, Prattville Pride's participation was discussed, and some attendees made demands that Prattville Pride's float be removed from the parade.  Recognizing the legal issues attendant to that action, the City attorney advised against removing the group. No action was taken to remove Prattville Pride from the parade at that point.  However, public opposition persisted, some of which included internet posts about slashing tires and throwing eggs, rocks, and water at Prattville Pride's float.

On December 5, 2024—the day before the parade—Prattville Pride asked the City for additional police protection due to concerns over the internet comments. In response, instead of providing police protection or simply rejecting the request, the City removed Prattville Pride from the parade, asserting the safety of the citizens in the community.

Prattville Pride and two of its members then sued the City, claiming a violation of their First Amendment and Fourteenth Amendment rights. Prattville Pride sought emergency injunctive relief and an order putting them back into the Christmas parade with additional police protection.

This Court held an emergency hearing on the morning of December 6, 2024— the day of the parade.  After the hearing and later that day, the Court granted Prattville Pride's request for injunctive relief, ordered Prattville Pride back into the

parade, and ordered the City to provide additional police protection. The City complied with the order, and Prattville Pride participated in the Christmas parade with additional police protection, largely without incident except for a lone water balloon that was allegedly thrown.  The City then moved to dismiss this case based on mootness.

## JURISDICTION AND VENUE

When this action was filed, the Court had original subject matter jurisdiction over the federal issues raised in this case under 28 U.S.C. §§ 1331, 1343.  But a court has an ongoing "obligation . . . to examine its own subject matter jurisdiction . . . at each stage of the proceedings." *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 975 (11th Cir. 2005). Whether the Court has subject matter jurisdiction is a topic of this opinion.  As for personal jurisdiction and venue, the parties do not contest either, and there are adequate allegations to support both.  *See* 28 U.S.C. § 1391.

## STANDARD OF REVIEW

The City moves to dismiss under both Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6).  When a Rule 12(b)(1) motion is filed with another Rule 12 motion, the Court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *See Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam).[2]  Because this Court lacks subject matter jurisdiction, the Court declines to address the parties' Rule 12(b)(6) arguments.

Fed. R. Civ. P. 12(b)(1) allows a party to assert by motion the defense of "lack of subject-matter jurisdiction."  Federal courts are courts of limited subject matter jurisdiction. U.S. CONST. art. III, § 2. If a court lacks subject matter jurisdiction over

---

[2] "[D]ecisions of the United States Court of Appeals for the Fifth Circuit . . . as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date," are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

a matter, it must dismiss it. *Travaglio v. Am. Exp. Co.*, 735 F.3d 1266, 1269 (11th Cir. 2013).

Fed. R. Civ. P. 12(b)(1) permits two forms of attack on a court's subject matter jurisdiction: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). "Facial attacks" on subject matter jurisdiction are similar to the Fed. R. Civ. P. 12(b)(6) standard in that the court takes the allegations as true and then determines whether the complaint "sufficiently alleged a basis of subject matter jurisdiction." *Id.* at 1529 (internal quotations and citation omitted). "Factual attacks," however, "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings." *Id.* (internal quotations and citation omitted). With factual attacks, a "district court may consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted). This means a court may weigh the facts and is "not constrained to view them in the light most favorable to [the plaintiff]." *Id.* (citation omitted).

## DISCUSSION

### A.    The Case is Moot

A federal court's subject matter jurisdiction is limited to "Cases" or "Controversies." U.S. CONST. art. III, § 2. Without a live case or controversy, the case is moot and must be dismissed for lack of subject matter jurisdiction. *Soliman v. United States ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002).

"A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* (alteration adopted and internal quotation marks omitted) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). Even if events occur *after* the filing of the lawsuit and "deprive the court of the ability to give the plaintiff meaningful relief," those post-filing events render

4

the case moot, and it must be dismissed. *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 115 F.4th 1266, 1283 (11th Cir. 2024) (internal quotation marks and citation omitted).  But a case only becomes moot "when it is impossible for a court to grant any effectual relief . . . to [a] prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Knox v. Serv. Emps.*, 567 U.S. 298, 307 (2012)). Even if there is only a small interest "in the outcome of the litigation," the case remains live. *Id.*

The mootness doctrine has two narrow exceptions.  First, the "capable of repetition yet evading review" exception "applies when (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, *and* (2) there is a reasonable expectation that the same complaining party will be subject to the same action again."  *Warren v. DeSantis*, 125 F.4th 1361, 1364–65 (2025) (per curiam) (internal quotations and citation omitted) (emphasis added); *see also Soliman*, 296 F.3d at 1242–43 ("[C]apable of being repeated and evading review [is] . . . [a] narrow [exception], and applies only in exceptional situations." (internal quotations and citation omitted)). The plaintiff bears the burden of showing application of this exception. *See Warren*, 125 F.4th at 1364–65.

The second exception—the "voluntary cessation" exception—applies when a defendant voluntarily stops its allegedly unlawful behavior to avoid a lawsuit. *Cambridge Christian Sch., Inc.*, 115 F.4th at 1284.  "Otherwise[,] a defendant could willingly change its behavior to avoid a lawsuit and then, after doing so, return to its old ways." *Id.* (internal quotation marks and citation omitted).

There are times, however, where voluntary cessation *does* moot a case. *Id.* "A defendant's voluntary conduct may moot a case *only* if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (internal quotation marks and citation omitted) (emphasis added). But this standard is stringent, *id.*, and it is on the defendant—the party

5

asserting mootness—to persuade the court that the "challenged conduct cannot reasonably be expected to start up again . . . ," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

In the injunctive relief context, "[t]he purpose of an injunction is to prevent future violations." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (citation omitted). Therefore, an action may remain a live case or controversy after the wrongful conduct stops. *See id.* The case is not moot if the party seeking the injunction "satisf[ies] the court that relief is needed." *Id.* To carry this burden and keep the case alive, the party seeking injunctive relief must show that there is still a "cognizable danger" that the violation reoccurs. *Id.* Cognizable danger of reoccurrence is "something more than the mere possibility" of reoccurrence. *Id.*; *Cambridge Christian Sch., Inc.*, 115 F.4th at 1283; *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) ("Past exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief if *unaccompanied* by any continuing, present injury or real and immediate threat of repeated injury." (internal quotation marks and citation omitted) (emphasis added)).

Here, Prattville Pride argues this case is not moot because 1) Prattville Pride has a personal stake and legal interest in the outcome of the case and 2) two exceptions apply.

### i.    Prattville Pride's Personal Stake and Legal Interest in the Case

Prattville Pride argues they still have a "personal stake and interest in the outcome of [the] case" and "should not be forced to return to the Court [to] seek[] court intervention to assert and protect their [c]onstitutional rights every time they wish to participate in a city-wide event." (Doc. 30 at 4.) Except for their damages argument, Prattville Pride does not explain how they continue to have a personal stake and interest in the case when they did, in fact, participate in the Christmas

parade. [3] According to the Complaint, Prattville Pride's constitutional rights would be violated only if they were blocked from participating in the Christmas parade. (Doc. 1 at 5 ("Plaintiffs' First Amendment right to freedom of speech *will be violated if* the Plaintiffs' participation in the [Christmas parade] is not allowed"); Doc. 25-1 at 5 (same).)   And here, it is undisputed that Prattville Pride participated in the Christmas parade with additional police protection.

Prattville Pride also argues that their claim for damages, including nominal damages, "clearly" is sufficient to keep their case "live" within the meaning of Article III of the Constitution. (Doc. 30 at 5.)   Prattville Pride is correct in that nominal damages are enough to keep a case live. *See Moms for Liberty - Brevard Cnty. v. Brevard Pub. Sch.*, 118 F.4th 1324, 1335 (11th Cir. 2024); *see also Williams v. Aguirre*, 965 F.3d 1147, 1161 (11th Cir. 2020) ("[A] plaintiff whose constitutional rights are violated is entitled to nominal damages . . . ." (internal quotations and citation omitted)).   But a request for nominal damages can only save a claim from mootness if "the plaintiff bases his claim on a completed violation of a legal right." *Moms for Liberty*, 118 F.4th at 1335 (internal quotations and citation omitted). Again, Prattville Pride's Complaint fails to allege a "completed violation" of a constitutional right—this is because Prattville Pride participated in the Christmas parade. Outside the constitutional violation allegations, the Complaint alleges no other harm.   Thus, Prattville Pride is not entitled to nominal or other damages.[4]

---

[3] To the extent Prattville Pride alleges in their *Response to Show Cause Order* (doc. 12) that police officers failed to apprehend a spectator who allegedly threw a water balloon at their float during the Christmas parade, those are different allegations against different possible and future defendants outside the scope of this action.

[4] The Complaint requested liquidated, punitive, and compensatory damages in addition to nominal damages. The proposed Amended Complaint leaves out compensatory damages but otherwise requests the same.

Without a constitutional violation and without a cognizable claim for damages, "it is impossible for [the] [C]ourt to grant any effectual relief." *Chafin*, 568 U.S. at 172. Because Prattville Pride has failed to show a personal interest or legal stake in the case, the issue at hand is no longer live and is therefore moot, *see Soliman*, 296 F.3d at 1242—unless an exception applies.

### ii.    The Mootness Doctrine Exceptions

Prattville Pride argues that both exceptions to the mootness doctrine apply here. Prattville Pride first argues that the "capable of repetition[] yet evading review" exception applies because "[w]ithout further litigation and assessment of damages and other relief, there is a reasonable expectation that the City will continue to engage in the exact same unacceptable behavior that has led to the initiation of this case in limiting or restricting Prattville Pride's participation." (Doc. 12 at 2.) To support this argument, Prattville Pride points out that the City "hosts a multitude of events throughout the year in which the general public and organizations are allowed to participate." (*Id.*) Prattville Pride also points to the City's decision to remove them from the parade over the advice of the City attorney. This action, according to Prattville Pride, "should be considered by this Court when weighing whether the Defendants have met 'the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again.'" (Doc. 30 at 4 (quoting *Cambridge Christian Sch., Inc.*, 115 F.4th at 1284).)

The burden is on Prattville Pride to prove that their removal from the Christmas parade is capable of repetition yet evading review. *See Warren*, 125 F.4th at 1365. Prattville Pride has not met its burden. It has not shown that this case is one such "exceptional situation" to which this "narrow" exception applies. *Soliman*, 296 F.3d at 1242–43. For Prattville Pride to be subject to the same action again, a host of events must occur: 1) Prattville Pride must apply to participate in a City-sponsored parade; 2) the City must approve Prattville Pride's application; 3)

8

members of the public must threaten Prattville Pride due to its participation in the parade; 4) Prattville Pride must report safety concerns based on those threats and request police protection; and 5) the City, without investigating the threats or taking any other action, must remove Prattville Pride from the parade. Prattville Pride has established no reasonable expectation that these events will occur again.

Further, Prattville Pride's argument is undermined by the fact that, since the Christmas parade, Prattville Pride 1) applied to enter a float in the City-sponsored Mardi Gras parade; 2) the City approved Prattville Pride's application; and 3) Prattville Pride participated in the parade. And it apparently did so without incident. As such, Prattville Pride has not shown that the capable of repetition yet evading review exception is applicable.

Prattville Pride also argues that the voluntary cessation exception applies. As to this exception, the City bears the burden. The City must show that a future unconstitutional removal of Prattville Pride from a City-sponsored parade is "not reasonably . . . expected to recur." *Cambridge Christian Sch., Inc.*, 115 F.4th at 1284 (citations omitted). Under the allegations presented in the Complaint, the Court is satisfied that Prattville Pride's removal from the City's annual Christmas parade "cannot reasonably be expected to start up again . . . ." *Friends of the Earth, Inc.*, 528 U.S. at 189.

In summary, Prattville Pride emphasizes the possibility of reoccurring constitutional violations because 1) the Court had to order the City to readmit the group to the Christmas parade and 2) the City removed Prattville Pride over the advice of the City's own legal counsel. This is not persuasive. Even though "[t]he purpose of an injunction is to prevent future violations," Prattville Pride must allege or show more than "the mere possibility" of reoccurrence of future constitutional violations by removal from City parades. *W.T. Grant Co.*, 345 U.S. at 633. That Prattville Pride was removed once before and that this Court granted Prattville Pride

emergency injunctive relief is not enough to show that there exists a live case or controversy here. This is so because there is nothing to show a "continuing, present injury or real and immediate threat of repeated injury." *Cotterall*, 755 F.2d at 780 (citation omitted). Prattville Pride has failed to carry its burden that there still exists a "cognizable danger" that the violation will reoccur, and therefore they have failed to "satisfy the [C]ourt that relief is needed." *W.T. Grant Co.*, 345 U.S. at 633 (citation omitted).

While Ebenezer Scrooge "honour[s] Christmas in [his] heart, and tr[ies] to keep it all the year," this case, unlike Mr. Scrooge, cannot not "live in the Past, the Present, and the Future." CHARLES DICKENS, *A Christmas Carol*, *in* A CHRISTMAS CAROL AND OTHER STORIES 15, 96–97 (THE READER'S DIGEST ASS'N, 1988) (1843).

The Christmas parade is over, and Prattville Pride participated in it. This case is therefore over too. The City's Mardi Gras parade shows that the City learned its lesson. And like Mr. Scrooge, the City did "not shut out the lessons" of the 2024 Christmas season. *Id.* at 97. Because this action is moot, the City's motion to dismiss will be granted for lack of subject matter jurisdiction.

## B. Amending the Complaint is Futile

Also pending is Prattville Pride's motion for leave to file an amended complaint. The proposed amended complaint, if allowed and filed, does not change the outcome here.

Prattville Pride admits that the Amended Complaint "maintains the counts and allegations against the same defendants from the original complaint" and amends only "the specific relief from a Temporary Injunction to Permanent Injunction." (Doc. 25 at 1.) Specifically, the Amended Complaint asks the Court to issue a permanent injunction directing the City to allow Prattville Pride to participate in all future City parades. But it fails to provide sufficient allegations showing more than

"the mere possibility" of reoccurrence of future constitutional violations by removal from City parades. *W.T. Grant Co.*, 345 U.S. at 633.

For the same reasons above and the fact that Prattville Pride already has participated in a City parade without issue, the Amended Complaint too fails to show that relief is needed.[5]  In other words, the Amended Complaint also does not state a live case or controversy, and allowing it would be futile. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007); *see also Smith v. City of Johns Creek*, No. 24-10815, 2025 WL 313165, at *5 (11th Cir. Jan. 28, 2025) (per curiam) (explaining in the pro se context that "[l]eave to amend is not required if a more carefully drafted complaint could not state a claim—*i.e.*, if amendment would be futile" (internal quotations and citations omitted)). Thus, the motion for leave to amend the complaint will be denied.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

1) The Defendants' *Motion to Dismiss for Failure to State a Claim, Motion to Dismiss for Lack of Jurisdiction* (doc. 21) is **GRANTED in part** and **DENIED in part.** To the extent that the motion moves to dismiss the Complaint for lack of jurisdiction, it is **GRANTED**. To the extent the motion moves to dismiss for failure to state a claim, it is **DENIED** as moot;

2) The Plaintiffs' *Motion to Amend/Correct 1 Complaint* (doc. 25) is **DENIED**; and

3) A separate judgment will be issued.

---

[5] Prattville Pride's Amended Complaint essentially asks the Court to keep the case open in perpetuity—something the Court will not do.  If, in the future, Prattville Pride believes its constitutional rights are being violated under similar circumstances to those presented here, Prattville Pride certainly has recourse and can file a similar federal lawsuit in the Middle District of Alabama and obtain a quick decision.  After all, within twenty-four hours of being notified that the City was removing Prattville Pride from the Christmas parade, Prattville Pride was able to obtain a judicial order returning them to the parade.

**DONE** and **ORDERED** on this the 10th day of April 2025.

R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE